IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JONATHON STRIFE, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-18-3513 |
| § | |
| WESTEX SECURITY SERVICES, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Jonathon Strife sued Westex Security Services, Inc., his former employer, asserting disability discrimination and retaliation claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a). After discovery, Westex moved for summary judgment, arguing that the record evidence does not support an inference that Strife was disabled or that he engaged in an activity protected by the ADA. Strife has not responded.

After a careful review of the complaint, the motion, the record evidence, and the applicable law, the court grants Westex's summary judgment motion. (Docket Entry No. 17). Westex's motion to dismiss is denied as moot. (Docket Entry No. 16). Final judgment is separately entered. The reasons for these rulings are set out in detail below.

**I.  Background**

Westex is a security services company that provides "unarmed, company trained and supervised, security personnel" for client protection. (Docket Entry No. 17-1 at 1). Westex's security guards perform tasks based on client requirements, including "standing and roving patrols, manning client security centers, electronic surveillance, security audits and security monitoring."

(*Id.*). The company's disciplinary policy states that "[s]leeping during working hours or while on duty" will result in "[i]mmediate [d]ischarge." (*Id.* at 5).

Strife worked for Westex as a security operations center supervisor from August 17, 2015, to December 16, 2015. (*Id.* at 2). Strife was assigned to CenterPoint Energy's Security Operations Center, where he monitored CenterPoint's security operations and was "responsible for the direct supervision of the Westex security personnel working his shift." (*Id.*). Strife was "under constant oversight by [CenterPoint's] own security" staff. (*Id.*).

On December 6, 2015, a Sunday, Strife fell at home while off duty, cutting his chin. (Docket Entry No. 17-2 at 1). He went to the emergency room and received stitches to close the wound. (*Id.*). Strife went to work the next day, December 7, and did not tell his supervisor, Tom Behne, about the accident. (Docket Entry No. 1 at 5).

On December 8, Behne saw Strife's stiches and reported the injury to Cassidy Rizik, Westex's human resources manager, who told Strife to obtain a "doctor's note from [his] emergency visit." (Docket Entry No. 17-2 at 1, 5). Strife did so and gave Rizik an "Excuse from Work or School" slip stating that he could return "to full physical activity as of" December 6, 2015. (*Id.* at 7).

Strife concedes that he "unintentionally nodded off" at his post on December 11, 2015. (Docket Entry No. 1 at 6; Docket Entry No. 17-1 at 2). Behne saw Strife sleeping at work on December 12. (Docket Entry No. 17-1 at 2). On December 16, Westex fired Strife for violating the disciplinary policy that forbid sleeping on duty and made it a terminable offense. (*Id.*). On December 22, Westex received notice that Strife had applied for unemployment benefits on December 18. (Docket Entry No. 17-2 at 10).

Strife sued Westex in September 2018, alleging that Westex fired him "for an action associated with a report of disability, perception of disability, or a disability," in violation of the ADA. (Docket Entry No. 1 at 6). Strife also alleges that Westex unlawfully retaliated against him by disputing his unemployment-compensation claim. (*Id.* at 7). Westex has moved for summary judgment, arguing that the record evidence does not show that: Strife had a disability or was regarded by Westex as having a disability; or that Strife engaged in an ADA-protected activity. (Docket Entry No. 16, 17). Strife asked the court for two extensions to respond to Westex's motions. (Docket Entry No. 18, 20). The court granted both requests and required Strife to respond by July 19, 2019. (Docket Entry No. 19, 21). He did not respond.

## II. The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations and citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288

(5th Cir. 2018) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate "the precise manner in which" that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III. Analysis

#### A. The Discrimination Claim

"The ADA prohibits an employer from 'discriminating against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (alteration in original)

4

(quoting *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016)). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Id.* (alteration in original) (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

"The ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (quoting 42 U.S.C. § 12102(1)). "Major life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Id.* (quoting 42 U.S.C. § 12102(2)(A)).

A temporary, nonchronic impairment of short duration, with little or no long-term or permanent impact, is usually not a disability under the ADA. *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 619 (5th Cir. 2009); *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). Examples of temporary, nondisabling impairments include "broken limbs, sprained joints, concussions, appendicitis, and influenza." *Harper v. Fort Bend. Indep. Sch. Dist.*, No. H-16-1678, 2017 WL 1881971, at *11 (S.D. Tex. May 9, 2017). A temporary impairment may be covered only if it is sufficiently severe as to substantially limit a major life activity beyond the short-term effects. *Clark v. Boyd Tunica, Inc.*, 3:14-CV-204-MPM-JMV, 2016 WL 853529, at *4 (N.D. Miss. Mar. 1, 2016), *aff'd*, 665 F. App'x 367 (5th Cir. 2016).

The undisputed record evidence confirms that Strife's chin wound was a temporary, nondisabling impairment, foreclosing his disability discrimination claim. The only medical

treatment Strife received was stiches to close the cut. (Docket Entry No. 17-2 at 3). The "Excuse from Work" slip from Strife's treating hospital states that he could return to work without limitation on December 6, 2015, the same date as his injury. (*Id.* at 7). Strife did return to work the next day, December 7, 2015, without complaining about the injury or giving Westex medical documents showing that the chin cut limited him in any way, even for a short period. (Docket Entry No. 1 at 5–6; Docket Entry No. 17-3). The record evidence shows that the cut did not substantially limit one of Strife's major life functions, including his ability to sleep, and that Strife did not have a record of impairment.

Strife also alleges that he was "regarded as" disabled. (Docket Entry No. 1 at 6). No record evidence raises a reasonable inference that Behne or any other Westex employee regarded Strife as disabled. To the contrary, the undisputed record evidence is that Strife's cut, while severe enough to require stiches, did not limit a major life function because Strife returned to work the day after the injury, and the "Excuse from Work" slip allowed him to perform his duties with no restrictions or limitations.

Because Strife cannot identify record evidence supporting an inference that he had a disability under the ADA or was regarded as disabled, he cannot make a *prima facie* showing of disability discrimination. *Moss*, 851 F.3d at 417. The court grants Westex summary judgment on Strife's ADA discrimination claim.

### B. The Retaliation Claim

"To show an unlawful retaliation, [Strife] must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348–49 (5th Cir. 2019). Courts have recognized the following ADA-protected activities:

6

- "filing charges with the . . . EEOC and other appropriate agencies alleging discrimination";

- "complaining to an employer . . . regarding disability discrimination";

- "aiding or encouraging another employee to exercise rights under the ADA";

- "advocating on behalf of disabled students or on behalf of the employee's own child";

- "requesting a reasonable accommodation or reassignment";

- "recalculating an employee's long-term disability benefit amount"; and

- "filing vacancies for which an employee had applied with employees with a lower rank."

2 AMERICANS WITH DISABILITIES: PRACTICE & COMPLIANCE MANUAL § 7:397 (2019); *see Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015).

Strife did none of these things, or anything close. He alleges that filing for unemployment compensation is protected under the ADA and triggers its antiretaliation provision. (Docket Entry No. 1 at 7). But the mere filing for unemployment compensation is not a protected activity under the ADA and does not trigger its antiretaliation provision. *See, e.g.*, *Edwards v. Creoks Mental Health Servs., Inc.*, 505 F. Supp. 2d 1080, 1093 n.4 (N.D. Okla. 2007). Because the undisputed record evidence shows that Strife did not engage in a protected activity, he cannot make a *prima facie* showing of unlawful retaliation. The court grants summary judgment to Westex on Strife's retaliation claim.

### IV. Conclusion

Westex's summary judgment motion is granted, and its motion to dismiss is denied as moot. (Docket Entry Nos. 16, 17). Final judgment is separately entered.

SIGNED on July 24, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge